UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------X
JANASIA WADLEY.

                            Plaintiff,

      -against-

KIDDIE ACADEMY INTERNATIONAL, INC.,
ESSENTIAL BRANDS, INC.,
KIDDIE ACADEMY OF LANGHORNE,
CHRISTINA RECCA (individually),
RUCHI SRIVASTAVA (individually), and
LISA (last name unknown) (individually).


                            Defendants.
------------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**Plaintiff
Demands A
Trial by Jury**

Plaintiff, JANASIA WADLEY, as and for his Complaint against Defendants KIDDIE ACADEMY INTERNATIONAL, INC., ESSENTIAL BRANDS, INC., KIDDIE ACADEMY OF LANGHORNE, RUCHI SRIVASTAVA (individually), and LISA (last name unknown) (individually), respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), the Americans with Disabilities Act of 1990, 42U.S.C.§ 12101 *et.seq*. ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43P.S. §951, *et.seq*. ("PHRA") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of gender, and retaliated against by her employer for complaining of discrimination and retaliation.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under Title VII of the Civil Rights Act.

3. Venue is proper in this district because the events giving rise to this claim took place in Langhorne, PA within the Eastern District of Pennsylvania.

4. On or about January 17, 2017, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

5. On or about October 24, 2017, Plaintiff received a Right to Sue Letter from the EEOC.

6. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

7. Plaintiff's EEOC charge of discrimination was dual filed with the Pennsylvania Human Relations Commission.

8. At this time, Plaintiff has not exhausted her administrative remedies with the state and reserves her rights to amend her Complaint and add any and all state claims that become available to her at the time of exhaustion.

## PARTIES

1. Plaintiff JANASIA WADLEY (hereinafter referred to as Plaintiff and "WADLEY") is an individual female, residing in Bucks County in the Commonwealth of Pennsylvania.

2. That at all times herein mentioned, Defendant KIDDIE ACADEMY INTERNATIONAL, INC., is a business corporation duly existing under the laws of the State of Delaware.

3. That at all times herein mentioned, KIDDIE ACADEMY INTERNATIONAL, INC., operates from a corporate headquarters from 3415 Box Hill Corporate Center Drive, Abington, MD 21009.

4. In 1999, Defendant KIDDIE ACADEMY INTERNATIONAL, INC., changed their name to ESSENTIAL BRANDS, INC.,

5. That at all times herein mentioned, KIDDIE ACADEMY INTERNATIONAL, INC. a/k/a ESSENTIAL BRANDS, INC., operates multiple franchises, which provides community based child care and learning facilities.

6. Defendant ESSENTIAL BRANDS, INC.'s website states, "Parents wouldn't trust just anyone to care for their children. And neither do we. This is why we take extra special care in ensuring that only the most qualified and caring people are taking care of your child. Equally important, we strive to create an environment of growth and learning for our people as well.

7. That at all times herein mentioned, Defendant KIDDIE ACADEMY OF LANGHORNE is a fictitious business name registered with the Commonwealth of Pennsylvania.

8. That at all times herein mentioned, Defendant KIDDIE ACADEMY of LANGHORNE is a franchise of ESSENTIAL BRANDS, INC.

9. That at all times herein mentioned, KIDDIE ACADEMY OF LANGHORNE ESSENTIAL BRANDS, INC., (hereinafter referred to as Defendant and "KA") are single and joint employers of Plaintiff.

10. That at all times material, Defendant CHRISTINA RECCA (hereinafter referred to as Defendant and "RECCA") was employed by Defendant KA.

11. That at all times material, Defendant RECCA was employed as Academy Director for Defendant KA.

12. That at all times material, Defendant RECCA had supervisory authority over the Plaintiff.

13. That at all times material, Defendant RUCHI SRIVASTAVA (hereinafter referred to as Defendant and "RUCHI") was employed by Defendant KA.

14. That at all times material, Defendant RUCHI was employed by the franchise owner of Defendant KIDDIA ACADEMY OF LANGHORNE.

15. That at all times material, Defendant RUCHI had supervisory authority over the Plaintiff.

16. That at all times material, Defendant LISA (last name unknown) (hereinafter referred to as Defendant and "LISA") was employed by Defendant KA.

17. That at all times material, Defendant LISA was employed as Academy Director for Defendant KA.

18. That at all times material, Defendant LISA had supervisory authority over the Plaintiff.

## MATERIAL FACTS

19. On or around July 5, 2016, Plaintiff interviewed for the position of infant teaching assistant with Defendants.

20. On or around July 8, 2016, Defendant RECCA called Plaintiff and offered her the position. Defendant RECCA explained that she needed Plaintiff to come in and fill out paperwork prior to her first day, which was scheduled for on or around July 25, 2016.

21. On or around July 22, 2016, Plaintiff reported to Defendants KA to fill out the necessary paperwork to begin her employment.

22. On or around that same day, Plaintiff explained to Defendant RECCA that Plaintiff was pregnant. Plaintiff provided Defendant RECCA with a list of upcoming doctor appointments, and ultra sound dates related to her pregnancy.

23. At all times material, Defendants knew at the time they hired Plaintiff that she was pregnant.

24. On or around the beginning of September, Plaintiff had to attend doctor appointments related to her pregnancy more frequently.

25. At or around the same time, Plaintiff's co-worker Karen began to harass Plaintiff about how Plaintiff filled out daily forms for the children, and the bags Plaintiff used to hold diapers for the children.

26. Plaintiff's hours were also changed. When Plaintiff began working there, she worked from 8:00 A.M. until 5:00 P.M. with a break from 2:00 P.M.-3:00 P.M. Because a co-worker switched duties, Plaintiff's hours were then changed to 7:00 A.M. until 4:00 P.M. with a break from 1:00 P.M.-2:00 P.M.

27. On or around September 15, 2016, Plaintiff was rocking one of the infants to sleep and her co-worker Karen told Plaintiff to "get up off your butt and start doing something."

28. Plaintiff told Defendant Karen that she was trying to get the child to sleep and that she could not perform all of the duties by herself.

29. Plaintiff also told Defendant Karen that she was pregnant, and she was doing her job.

30. Plaintiff reported Karen's verbal attacks and harassing behavior to Defendant RUCHI. Defendant RUCHI asked Plaintiff, "Do you know how long she [Karen] has been here?" "We've never had any complaints about her before."

31. On or around the following day, Defendants asked Plaintiff if she wanted to be moved to the three-year-old classroom at the learning facility, rather than working in the infant room.

32. Plaintiff explained that she did not want to move to a different room. Plaintiff explained that she had already bonded with the infants and their parents. Further, if Plaintiff moved to the three-year-old room, her hours would change again for a third time in two (2) months of employment.

33. A couple of weeks after this, Plaintiff found a pill on the floor at the learning facility near two of the children. Plaintiff immediately picked up the medication and asked the two other women who were in the room, Karen and Meredith, if the medication belonged to them. Meredith responded, "No.," but Karen ignored Plaintiff.

34. Plaintiff took the medication to Defendant "LISA" the assistant director at the center, and Defendant LISA accused Plaintiff that the pill belongs to Plaintiff's brother who took medication for attention deficit hyperactivity disorder. Plaintiff explained that it was not his medication.

35. Defendant LISA later found out that the pill Plaintiff found was used to treat diabetes. Plaintiff's co-worker Karen is in fact a diabetic.

36. On or around September 29, 2016, Plaintiff was written up for using the microwave to heat up her lunch, which she was never instructed not to use. The write-up also included an insubordination write-up because Plaintiff had told Defendant LISA that

       she would make lunch when LISA completed the breakfast dishes. LISA asked Plaintiff if she wanted to do the dishes, which Plaintiff responded, no, she would begin lunch when LISA was finished.

37. LISA at no time instructed Plaintiff to do the dishes, but rather, asked Plaintiff if she would prefer to do them.

38. On or around October 3, 2016, Defendant RECCA wrote Plaintiff up for returning from lunch at 2:00 P.M. Plaintiff returned back from lunch late, because she had a doctor appointment and had to get blood work. Two hours prior, Plaintiff called and informed RECCA that the doctor required her to get blood work, but offered to do it another time if that was a problem.

39. Defendant RECCA told Plaintiff that it was fine to "do what you need to do."

40. Then, Defendant RECCA wrote Plaintiff up in retaliation for her request to get blood work.

41. When Plaintiff asked why she was being written up because she always provides advanced notice of her doctor appointments related to her pregnancy, Defendant RECCA blamed Plaintiff for not writing them on the appropriate piece of paper.

42. Defendants then made Plaintiff get a note from her doctor for the appointment, stating that Plaintiff had left without permission.

43. Plaintiff was permitted to attend the doctor appointment, and no other employee was required to provide a doctor note when they took their children to the doctor.

44. On or around the end of September Plaintiff notified Defendants that she may need to use the restroom more frequently due to the complications with her pregnancy.

45. On or around October 13, 2016, Plaintiff had to use the restroom, as a result of the complications related to her pregnancy. At approximately 7:30 A.M. Plaintiff buzzed for assistance in the classroom multiple times, to have someone relieve her.

46. Defendant LISA told Plaintiff that she was conducting a tour and would arrive to relieve Plaintiff in twenty (20) minutes.

47. At approximately 8:10 A.M. Defendant LISA had still not arrived to relieve Plaintiff.

48. Plaintiff again called LISA for assistance, to which LISA responded that she was now in an interview and could not relieve Plaintiff to use the restroom.

49. At the time Plaintiff had six (6) children in her care, and the ratio for a classroom was four (4) children per one teacher.

50. Plaintiff asked LISA if Defendants RUCHI, or RECCA could assist her.

51. LISA responded, "No, they are both busy."

52. Plaintiff's co-worker Meredith arrived and joined Plaintiff in the classroom. During that time, four of the children in the classroom were napping, and four were playing.

53. Plaintiff's co-worker Meredith only had to supervise the four children who were playing, and as a result was within the required ratio of four children per instructor.

54. After waiting over an hour, at approximately 8:40 A.M., Plaintiff fled the room to find a restroom before she urinated in her pants.

55. Plaintiff went to two different bathrooms, both were locked.

56. The restrooms had not both been locked at any time prior during Plaintiff's employment with Defendants.

57. Plaintiff had alerted her co-worker Meredith that she had to find a restroom to use.

58. Plaintiff ultimately had to use the restroom in the three-year-old classroom.

59. Once Plaintiff was finished, she was returning to the infant classroom, and witnessed Defendants LISA and RECCA in the hallway talking and laughing.

60. When Plaintiff went to clock out for lunch that same afternoon, she was again called into the office by Defendants RUCHI, RECCA, and LISA.

61. Defendants presented Plaintiff a termination letter for using the restroom and leaving Plaintiff's classroom out of ratio.

62. Again, Plaintiff's classroom had been out ratio prior to using the restroom, because Plaintiff was alone in the infant classroom with six (6) children, when the ratio is four (4) children per instructor.

63. Plaintiff explained that she held it as long as she could, but that she was afraid she would have relieved herself in her pants and on the floor of the classroom had she not rushed to the restroom.

64. Plaintiff also stated that earlier that day, she was in a classroom that was deficient in ratio of instructors to children and instructors because the Defendants RECCA, RUCHI and LISA left Plaintiff in the classroom alone with too many children the entire hour prior to using the restroom.

65. Because of Plaintiff's pregnancy, in response to her request for a reasonable accommodation to use the restroom, and in retaliation for Plaintiff's protests against the discrimination, Defendants' wrongfully and illegally terminated Plaintiff.

66. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

68. Upon information and belief, the discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

70. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

71. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

73. Title VII states in relevant parts as follows:

> § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

74. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her pregnancy and sex.

75. Furthermore, section 701 of the Civil Rights Act of 1964 as amended states that "'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

78. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

81. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

82. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability (pregnancy).

83. As such, Plaintiff has been damaged as set forth herein.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW (Not Against Individual Defendants)

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or

> support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

86. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race.

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

90. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

93. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
December 21, 2017

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By: _____
Samuel C. Wilson, Esq.
1845 Walnut Street, Suite 1601
Philadelphia, Pennsylvania 19103
(215) 391-4790