**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Janasia Wadley, | : | |
| Plaintiff, | : | No. 2:17-cv-05745-GJP |
| | : | |
| v. | : | |
| | : | |
| | : | Hon. Gerald J. Pappert, J. |
| Kiddie Academy International, Inc., *et al.*, | : | |
| Defendants. | : | |

## Order

**AND NOW**, this        day of                 , 2018, upon consideration of Defendants'

Motion to Dismiss, in Part, Plaintiff's Complaint Pursuant to FED. R. CIV. P.  12(b)(6), it is hereby

**ORDERED** and **DECREED** that the Motion is **GRANTED**.  Counts II, III, IV, and V of Plaintiff's

Complaint, along with all claims against Defendants Kiddie Academy International, Inc., and

Essential Brands, Inc., as hereby **DISMISSED** with prejudice.

BY THE COURT:

_____
Hon. Gerald J. Pappert, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Janasia Wadley, | : | |
| | : | No. 2:17-cv-05745-GJP |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Hon. Gerald J. Pappert, J. |
| Kiddie Academy International, Inc., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Motion to Dismiss, in Part, Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6)**

**AND NOW**, come Defendants, Kiddie Academy International, Inc., Essential Brands, Inc., Kiddie Academy of Langhorne, Christina Recca, Ruchi Srivatsava, and Lisa Urban (hereinafter collectively "Defendants"), by and through their undersigned counsel, and move this Honorable Court to dismiss, in part, Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6), and in support thereof aver as follows:

1.      Plaintiff initiated this action on or about December 21, 2017, alleging claims for: 1) gender and pregnancy discrimination pursuant to Title VII of the Civil Rights Act; 2) retaliation under Title VII of the Civil Rights Act; 3) disability discrimination pursuant to the Americans with Disabilities Act; 4) race discrimination under the Pennsylvania Human Relations Act; 5) retaliation under the Pennsylvania Human Relations Act; and 6) aiding and abetting under the Pennsylvania Human Relations Act.

2.      Plaintiff has not pled any facts sufficient to establish any theory of joint- or single-employer liability against Kiddie Academy International, Inc., or Essential Brands, Inc.

3.      Plaintiff has not pled any facts to establish that she engaged in any protected activity under Title VII of the Pennsylvania Human Relations Act.

4.      Plaintiff cannot sustain a claim for retaliation under Title VII of the Pennsylvania Human Relations Act.

5.　　Plaintiff failed to exhaust her administrative remedies with regard to a claim of disability discrimination.

6.　　Plaintiff has not pled any facts sufficient to establish that she suffered from any "disability" as that term is defined under the Americans with Disabilities Act.

7.　　Plaintiff cannot sustain a claim for disability discrimination under the Americans with Disabilities Act.

8.　　Plaintiff has not pled any facts to support a claim that she was discriminated against on the basis of her race.

**WHEREFORE**, Defendants respectfully request that this Honorable Court grant this Motion and dismiss Counts II, III, IV, and V of Plaintiff's Complaint, along with all claims against Kiddie Academy International, Inc., and Essential Brands, Inc.

Respectfully submitted,

DEASEY, MAHONEY & VALENTINI, LTD.

By:　_____

Rufus A. Jennings, Esquire
PA Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone: (215) 587-9400
Fax:　 (215) 587-9456
Email:　rjennings@dmvlawfirm.com

Attorney for Defendants

Date: 1/22/18

## Certificate of Service

I, Rufus A. Jennings, hereby certify that on the date set forth below, I did cause a true and correct copy of Defendants' Motion to Dismiss, in Part, Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6) and Memorandum of Law in Support thereof to be filed with the Court's ECF/PACER electronic filing system, where they were available for immediate viewing and download to the following individual:

Samuel C. Wilson, Esquire
DEREK SMITH LAW GROUP, PLLC
1845 Walnut Street, Suite 1601
Philadelphia, PA 19103

Rufus A. Jennings, Esquire

Date: 1/22/18

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Janasia Wadley, | : | |
| Plaintiff, | : | No. 2:17-cv-05745-GJP |
| | : | |
| v. | : | |
| | : | |
| | : | Hon. Gerald J. Pappert, J. |
| Kiddie Academy International, Inc., *et al.*, | : | |
| Defendants. | : | |

**Memorandum of Law in Support of Defendants' Motion to
Dismiss, in Part, Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6)**

***AND NOW***, come Defendants, Kiddie Academy International, Inc., Essential Brands, Inc., Kiddie Academy of Langhorne, Christina Recca, Ruchi Srivatsava, and Lisa Urban (hereinafter collectively "Defendants"), by and through their undersigned counsel, and submit this Memorandum of Law in Support of Defendants' Motion to Dismiss, in Part, Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6).

**I.     Introduction and Procedural Background**

Plaintiff initiated this action on or about December 21, 2017, alleging claims for: 1) gender and pregnancy discrimination pursuant to Title VII of the Civil Rights Act; 2) retaliation under Title VII of the Civil Rights Act; 3) disability discrimination  pursuant to the Americans with Disabilities Act; 4) race discrimination under the Pennsylvania Human Relations Act; 5) retaliation under the Pennsylvania Human Relations Act; and 6) aiding and abetting under the Pennsylvania Human Relations Act.  Plaintiff's claims arise out of her brief employment with Defendant, Kiddie Academy of Langhorne.  After making numerous accommodations for Plaintiff to attend all necessary prenatal doctor's appointments, Kiddie Academy of Langhorne was forced to terminate Plaintiff's employment after she left infant children unattended, in violation of state law.  As Plaintiff's Complaint fails to set forth sufficient facts to establish

several of the claims pled, Defendants now move to dismiss the Complaint, in part, pursuant to FED. R. CIV. P. 12(b)(6).

## II.    Factual Allegations of the Complaint[1]

Kiddie Academy of Langhorne (hereinafter "KAL") operates a franchise of Essential Brands, Inc., formerly known as Kiddie Academy International, Inc.[2]   Christina Recca was employed as the Academy Director of KAL.[3]   Ruchi Srivastava is the franchise owner of KAL.[4] Lisa Urban is the Academy Director of KAL.[5]

Plaintiff, Janasia Wadley, was hired by KAL to begin work on July 25, 2016.[6]   At the time Plaintiff was hired, Defendants were aware that she was pregnant.[7]   Plaintiff provided Defendants with a list of her doctors' appointments.[8]   On September 29, 2016, Plaintiff was written up for using the microwave and for insubordination.[9]   On October 3, 2016, Plaintiff was written up for returning late from lunch.[10]

Around the end of September 2016, Plaintiff informed Defendants that she may need to use the restroom more frequently due to her pregnancy.[11]   On October 13, 2016, Plaintiff needed to use the restroom.[12]   KAL was required to keep a ratio of one teacher for every four (4) children.[13]   When no one was available to relieve Plaintiff, Plaintiff left the classroom with

---

[1] For the purposes of a motion filed pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept the factual allegations contained in the Complaint as true.  See e.g. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3rd Cir. 2008).  Nothing contained in these moving papers shall be construed as an admission to any such allegations.
[2] Plaintiff's Complaint, attached hereto as Exhibit "A", at ¶¶ 4, 5, 8.
[3] Exhibit "A", at ¶ 11.
[4] Exhibit "A", at ¶ 14.
[5] Exhibit "A", at ¶ 17.
[6] Exhibit "A", at ¶ 20.
[7] Exhibit "A", at ¶ 23.
[8] Exhibit "A", at ¶¶ 22, 24.
[9] Exhibit "A", at ¶ 36.
[10] Exhibit "A", at ¶ 38.
[11] Exhibit "A", at ¶ 44.
[12] Exhibit "A", at ¶ 45.
[13] Exhibit "A", at ¶ 49.

one (1) teacher for eight (8) children.[14]   Later that day, Plaintiff was fired for leaving her classroom out-of-ratio.[15]

## III.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although this pleading standard does not require "detailed factual allegations, … it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 139 L.Ed.2d 868 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint that offers nothing more than "'labels and conclusions[,] … a formulaic recitation of the elements of a cause of action … [or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and should be dismissed. *Iqbal*, 129 S. Ct. at 1949, *citing Twombly*, 550 U.S. at 557. Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556 (retiring the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Under the *Twombly/Iqbal* paradigm, a Court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. First, the Court must identify and disregard allegations that are nothing more than legal conclusions and, therefore, "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Indeed, as both *Twombly* and *Iqbal* made clear, a Court need not consider allegations in the Complaint that constitute unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *See Twombly*, 550 U.S. at 556 (explaining that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a

---

[14] Exhibit "A", at ¶ 52.
[15] Exhibit "A", at ¶ 61.

factual allegation'"), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); *Bright v. Westmoreland County*, 380 F.3d 729, 735 (3rd Cir. 2004) ("In ruling on a Rule 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations."). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. If the factual allegations, assumed to be true, are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding of no liability. *See Id.*

In addition, the Court need not "credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997). In ruling on a 12(b)(6) motion, Courts consistently reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," and "legal conclusions cast in the form of actual allegations." *Id.* at 906, n. 8. A Court is not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations. *Baraka v. McGreevy*, 481 F. 3d 187, 211 (3rd Cir. 2007). As Plaintiff's claims against Defendants, as set forth in Plaintiff's Complaint, fail to state a plausible cause of action for which relief may be granted, such claims should be dismissed with prejudice.

IV.     **Legal Argument**

     a.     ***Plaintiff Has Failed to Allege Any Facts to Sustain a Claim Against Kiddie Academy International, Inc., or Essential Brands, Inc.***

Although Plaintiff names Kiddie Academy International, Inc. (hereinafter "KAI") Essential Brands, Inc. (hereinafter "EBI"), she does not plead any facts to explain how these parties possibly could be held liable.  Initially, Plaintiff pleads that KAI has not existed since 1999,[16] seventeen (17) years before Plaintiff was hired.  As such, there is no plausible claim against KAI.

With regard to EBI, Plaintiff has not set forth any factual allegations to justify her claims. Plaintiff makes the single allegation that, "That at all times herein mentioned, Defendant KIDDIE ACADEMY OF LANGHORNE ESSENTIAL BRANDS, INC., (hereinafter referred to as Defendant and "KA") are single and joint employers of Plaintiff."[17]  This is a legal conclusion that is not entitled to any consideration by the Court.  *See Iqbal* at 1950.  Other than this conclusory statement, there are no facts pled that would support a plausible claim that EBI and KAL are a single employer or joint employers.

Initially, the Complaint is devoid of any factual basis to suggest that EBI and KAL are joint employers.

> A joint employment relationship may exist when one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.  Thus, a joint employer relationship may exist for the purposes of antidiscrimination laws when two entities exercise significant control over the same employees.  In determining whether there is a "joint employer" relationship, such that two different companies can both be held liable for the same alleged misconduct, courts look to the following factors:
>
> > (1) Authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee

---

[16] Exhibit "A", at ¶ 4.
[17] Exhibit "A", at ¶ 9.

discipline; and (3) control of employee records, including payroll, insurance, taxes, and the like.

No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two.

*Anderson v. Finley Catering Co.*, 2016 U.S. Dist. LEXIS 149568, *6-7 (E.D. Pa. October 27, 2016) (*internal citations, quotations, and formatting omitted*).  Plaintiff affirmatively pleads that KAL is a franchisee of EBI.[18]  There are no allegations to establish the requirements of a joint employer relationship.

Similarly, Plaintiff has not pled any facts to set forth a plausible claim for a single employer theory of liability.  The Third Circuit "will consider a company and its affiliates a single employer under Title VII (1) when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining."  *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85-86 (3rd Cir. 2003).  In this matter, there is no suggestion that any entity split off from the other.  Instead, Plaintiff pleads that KAL is a franchisee of EBI.  Second, there are no allegations that any allegedly-discriminatory act was taken upon the direction of anyone at EBI.  Instead, Plaintiff attributes the decision to terminate her employment to Ms. Recca, Ms. Srivastava, and Ms. Urban.  Further, the relationship between EBI and KAL is not one of parent-subsidiary, but rather franchisor-franchisee.  Under these circumstances, no single-employer theory can be viable.

In the absence of any evidence to meet either of these theories, The Third Circuit applies a "substantive consolidation" test to identify single-employers.  *Nesbit*, at 87.  In applying this test, the Court should address the following factors:

(1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent

---

[18] Exhibit "A", at ¶ 8.

company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

*Ibid.* Plaintiff's Complaint is devoid of any allegations sufficient to establish any of these factors. In such absence, there is no basis to demonstrate liability against EBI, and all claims against it should be dismissed.

**b.    Plaintiff Has Not Pled Any Facts to Sustain a Claim for Race Discrimination**

In Count IV of the Complaint, Plaintiff alleges, "Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his [*sic*] race."[19] Pursuant to the Pennsylvania Human Relations Act (hereinafter "PHRA"):

> It shall be an unlawful discriminatory practice ... [f]or any employer because of the ... race ... to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a).  Race discrimination claims under the PHRA are subject to the same analysis as the claims under Title VII.  *See e.g. Lula v. Network Appliance, Inc.*, 245 Fed. Appx. 149, 151 fn.2 (3rd Cir. May 16, 2007).

> Under Title VII, to make a prima facie showing of race discrimination, a plaintiff must demonstrate that: (1) he or she belongs to a protected class; (2) he or she was qualified for the position; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.

*Coleman v. Pennsylvania State Police*, 561 Fed. Appx. 138, 146 (3rd Cir. 2014).  In this case, Plaintiff has not identified what her race is, or set forth any factual allegation to suggest that her race played any role in any employment decision made by KAL.  As such, her claim for race discrimination under the PHRA must be dismissed.

---

[19] Exhibit "A", at ¶ 86.

c.    **Plaintiff Has Not Pled a Plausible Claim for Retaliation**

In Count II of the Complaint, Plaintiff attempts to plead a claim for retaliation under Title

VII.  The Third Circuit has held:

> To advance a prima facie case of retaliation under Title VII ..., a
> plaintiff must show that: (1) the employee engaged in a protected
> employee activity; (2) the employer took an adverse employment
> action after or contemporaneous with the employee's protected
> activity; and (3) a causal link exists between the employee's
> protected activity and the employer's adverse action.

*Abramson v. William Paterson College. of N.J.*, 260 F.3d 265, 286 (3rd Cir. 2001).  In this case,

Plaintiff has not pled any facts that would establish that she engaged in any protected activity.

Simply mentioning that she is pregnant is not sufficient to show protected activity.  "[C]omplaints

must be specific enough to notify management of the particular type of discrimination at issue in

order to constitute "protected activity".  *Sanchez v. SunGard Availability Services*, 362 Fed.

Appx. 283, 288 (3rd Cir. January 28, 2010), *citing Barber v. CSX Distribution Services*, 68 F.3d

694, 702 (3rd Cir. 1995).  Plaintiff alleges:

> 78.    Defendants engaged in unlawful employment practice [*sic*]
> prohibited by 42 U.S.C. $2000e [*sic*] *et seq.* by retaliating against
> Plaintiff with respect to the terms, conditions or privileges of
> employment because of her opposition to the unlawful practices of
> Defendant.[20]

There are no facts pled to support this theory.  Plaintiff does not contend that she made any

complaint that she was treated unfairly because of her pregnancy.  Instead, she claims that she

was permitted to miss work for doctors' visits and that she was fired for violating Pennsylvania

law.  Under such circumstances, Plaintiff cannot establish a *prima facie* claim for retaliation

under Title VII.

d.    **Plaintiff Has Not Pled a Plausible Claim for Disability Discrimination**

Count III of Plaintiff's Complaint purports to plead a claim for disability discrimination

under the Americans with Disabilities Act (hereinafter "ADA").  Initially, however Plaintiff failed to

---

[20] Exhibit "A", at ¶ 78.

exhaust her administrative remedies with regard to this claim.  "[B]oth the ADA and the PHRA

require pursuit of administrative remedies before a plaintiff may file a complaint in court.  Thus,

a party who brings an employment discrimination claim under Title I of the ADA must follow the

administrative procedures set forth in Title VII of the Civil Rights Act of 1964."  *Churchill v. Star*

*Enterprises*, 183 F.3d 184, 190 (3rd Cir. 1999).  In this case, Plaintiff filed an administrative

complaint that alleged claims for "SEX, GENDER, AND PREGNANCY DISCRIMINATION,

RETALIATION, AND WRONGFUL TERMINATION."[21]  There is absolutely no mention of a

claim for disability discrimination in that administrative complaint.  As such, Plaintiff failed to

exhaust her administrative remedies, and her ADA claim must be dismissed.

Second, on its face, the Complaint fails to plead a plausible claim for disability

discrimination.  Pursuant to the ADA, "No covered entity shall discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

> The ADA forbids employers from "discriminating against a
> qualified individual with a disability because of the disability of
> such individual in regard to job application procedures, the hiring,
> advancement,   or   discharge   of   employees,   employee
> compensation, job training, and other terms, conditions, and
> privileges of employment."

*Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 511 (3rd Cir. 2001).  In order to

establish a *prima facie* case for disability discrimination, Plaintiff must show, "(1) [s]he is

disabled within the meaning of the ADA, (2) [s]he is otherwise qualified for the job, and (3) [s]he

was subjected to an adverse employment action because of that disability."  *Wilson v. Iron Tiger*

*Logistics, Inc.*, 628 Fed. Appx 832, 834-35 (3rd Cir. 2015).

---

[21] EEOC Complaint, attached hereto as Exhibit "B", at p. 1.  As this administrative complaint is reference in Paragraph 4 of Plaintiff's Complaint, it is appropriate for the Court to consider it when ruling on a Rule 12(b)(6) Motion to Dismiss.  *See e.g. Fallon v. Mercy Catholic Medical Center*, 2017 U.S. App. LEXIS 25241, *11 (3rd Cir. December 14, 2017) ("[A] court may consider a document that is 'integral to or explicitly relied upon' in the complaint.")

Pursuant to 42 U.S.C. § 12102(1)(A) and (B), a "disability" is defined as, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; [or] (B) a record of such an impairment."  Plaintiff alleges, "Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability (pregnancy)."[22]  Under the ADA, pregnancy does not constitute a disability.  *See e.g. Ahern v. EResearch Technology, Inc.*, 183 F. Supp. 3d 663, 668 (E.D. PA. 2016) ("Pregnancy, alone, does not constitute disability.").  Under the clear and unambiguous terms of Plaintiff's own pleading, she has not alleged the existence of any cognizable disability.  As such, Count IV of her Complaint would fail, even if she had exhausted her administrative remedies.

**V.**     **Conclusion**

In light of the foregoing, Plaintiff has failed to plead sufficient facts to sustain the claims in Counts II, III, IV, and V of her Complaint, as well as all claims against Defendants Kiddie Academy International, Inc., and Essential Brands, Inc.   As such, these claims should be dismissed with prejudice.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By:  _____
Rufus A. Jennings, Esquire
PA Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone: (215) 587-9400
Fax:    (215) 587-9456
Email:  rjennings@dmvlawfirm.com

Attorney for Defendants

Date: 1/22/18

---

[22] Exhibit "A", at ¶ 82.

- 10 -

# Exhibit "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------------------X
JANASIA WADLEY.

                                 Plaintiff,

                -against-

KIDDIE ACADEMY INTERNATIONAL, INC.,
ESSENTIAL BRANDS, INC.,
KIDDIE ACADEMY OF LANGHORNE,
CHRISTINA RECCA (individually),
RUCHI SRIVASTAVA (individually), and
LISA (last name unknown) (individually).

                               Defendants.
-----------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**Plaintiff
Demands A
Trial by Jury**

Plaintiff, JANASIA WADLEY, as and for his Complaint against Defendants KIDDIE
ACADEMY INTERNATIONAL, INC., ESSENTIAL BRANDS, INC., KIDDIE ACADEMY
OF LANGHORNE, RUCHI SRIVASTAVA (individually), and LISA (last name unknown)
(individually), respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

    U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

    1991, Pub. L. No. 102-166 ("Title VII")), the Americans with Disabilities Act of 1990,

    42U.S.C.§ 12101 *et.seq.* ("ADA"), and the Pennsylvania Human Relations Act, as

    amended, 43P.S. §951, *et.seq.* ("PHRA") and seeks damages to redress the injuries

    Plaintiff has suffered as a result of being discriminated against on the basis of gender,

    and retaliated against by her employer for complaining of discrimination and

    retaliation.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under Title VII of the Civil Rights Act.

3. Venue is proper in this district because the events giving rise to this claim took place in Langhorne, PA within the Eastern District of Pennsylvania.

4. On or about January 17, 2017, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

5. On or about October 24, 2017, Plaintiff received a Right to Sue Letter from the EEOC.

6. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

7. Plaintiff's EEOC charge of discrimination was dual filed with the Pennsylvania Human Relations Commission.

8. At this time, Plaintiff has not exhausted her administrative remedies with the state and reserves her rights to amend her Complaint and add any and all state claims that become available to her at the time of exhaustion.

## PARTIES

1. Plaintiff JANASIA WADLEY (hereinafter referred to as Plaintiff and "WADLEY") is an individual female, residing in Bucks County in the Commonwealth of Pennsylvania.

2. That at all times herein mentioned, Defendant KIDDIE ACADEMY INTERNATIONAL, INC., is a business corporation duly existing under the laws of the State of Delaware.

3.  That at all times herein mentioned, KIDDIE ACADEMY INTERNATIONAL, INC.,

    operates from a corporate headquarters from 3415 Box Hill Corporate Center Drive,

    Abington, MD 21009.

4.  In 1999, Defendant KIDDIE ACADEMY INTERNATIONAL, INC., changed their name

    to ESSENTIAL BRANDS, INC.,

5.  That at all times herein mentioned, KIDDIE ACADEMY INTERNATIONAL, INC. a/k/a

    ESSENTIAL BRANDS, INC., operates multiple franchises, which provides

    community based child care and learning facilities.

6.  Defendant ESSENTIAL BRANDS, INC.'s website states, "Parents wouldn't trust just

    anyone to care for their children. And neither do we. This is why we take extra special

    care in ensuring that only the most qualified and caring people are taking care of your

    child. Equally important, we strive to create an environment of growth and learning

    for our people as well.

7.  That at all times herein mentioned, Defendant KIDDIE ACADEMY OF LANGHORNE

    is a fictitious business name registered with the Commonwealth of Pennsylvania.

8.  That at all times herein mentioned, Defendant KIDDIE ACADEMY of LANGHORNE is

    a franchise of ESSENTIAL BRANDS, INC.

9.  That at all times herein mentioned, KIDDIE ACADEMY OF LANGHORNE

    ESSENTIAL BRANDS, INC., (hereinafter referred to as Defendant and "KA") are

    single and joint employers of Plaintiff.

10. That at all times material, Defendant CHRISTINA RECCA (hereinafter referred to as

    Defendant and "RECCA") was employed by Defendant KA.

11.   That at all times material, Defendant RECCA was employed as Academy Director for Defendant KA.

12.   That at all times material, Defendant RECCA had supervisory authority over the Plaintiff.

13.   That at all times material, Defendant RUCHI SRIVASTAVA (hereinafter referred to as Defendant and "RUCHI") was employed by Defendant KA.

14.   That at all times material, Defendant RUCHI was employed by the franchise owner of Defendant KIDDIA ACADEMY OF LANGHORNE.

15.   That at all times material, Defendant RUCHI had supervisory authority over the Plaintiff.

16.   That at all times material, Defendant LISA (last name unknown) (hereinafter referred to as Defendant and "LISA") was employed by Defendant KA.

17.   That at all times material, Defendant LISA was employed as Academy Director for Defendant KA.

18.   That at all times material, Defendant LISA had supervisory authority over the Plaintiff.

## MATERIAL FACTS

19.   On or around July 5, 2016, Plaintiff interviewed for the position of infant teaching assistant with Defendants.

20.   On or around July 8, 2016, Defendant RECCA called Plaintiff and offered her the position.  Defendant RECCA explained that she needed Plaintiff to come in and fill out paperwork prior to her first day, which was scheduled for on or around July 25, 2016.

21.    On or around July 22, 2016, Plaintiff reported to Defendants KA to fill out the necessary paperwork to begin her employment.

22.    On or around that same day, Plaintiff explained to Defendant RECCA that Plaintiff was pregnant.  Plaintiff provided Defendant RECCA with a list of upcoming doctor appointments, and ultra sound dates related to her pregnancy.

23.    At all times material, Defendants knew at the time they hired Plaintiff that she was pregnant.

24.    On or around the beginning of September, Plaintiff had to attend doctor appointments related to her pregnancy more frequently.

25.    At or around the same time, Plaintiff's co-worker Karen began to harass Plaintiff about how Plaintiff filled out daily forms for the children, and the bags Plaintiff used to hold diapers for the children.

26.    Plaintiff's hours were also changed.  When Plaintiff began working there, she worked from 8:00 A.M. until 5:00 P.M. with a break from 2:00 P.M.-3:00 P.M.  Because a co-worker switched duties, Plaintiff's hours were then changed to 7:00 A.M. until 4:00 P.M. with a break from 1:00 P.M.-2:00 P.M.

27.    On or around September 15, 2016, Plaintiff was rocking one of the infants to sleep and her co-worker Karen told Plaintiff to "get up off your butt and start doing something."

28.    Plaintiff told Defendant Karen that she was trying to get the child to sleep and that she could not perform all of the duties by herself.

29.    Plaintiff also told Defendant Karen that she was pregnant, and she was doing her job.

30.   Plaintiff reported Karen's verbal attacks and harassing behavior to Defendant RUCHI.
Defendant RUCHI asked Plaintiff, "Do you know how long she [Karen] has been
here?" "We've never had any complaints about her before."

31.   On or around the following day, Defendants asked Plaintiff if she wanted to be moved
to the three-year-old classroom at the learning facility, rather than working in the
infant room.

32.   Plaintiff explained that she did not want to move to a different room.  Plaintiff
explained that she had already bonded with the infants and their parents.  Further, if
Plaintiff moved to the three-year-old room, her hours would change again for a third
time in two (2) months of employment.

33.   A couple of weeks after this, Plaintiff found a pill on the floor at the learning facility
near two of the children.  Plaintiff immediately picked up the medication and asked
the two other women who were in the room, Karen and Meredith, if the medication
belonged to them.  Meredith responded, "No.," but Karen ignored Plaintiff.

34.   Plaintiff took the medication to Defendant "LISA" the assistant director at the center,
and Defendant LISA accused Plaintiff that the pill belongs to Plaintiff's brother who
took medication for attention deficit hyperactivity disorder.  Plaintiff explained that it
was not his medication.

35.   Defendant LISA later found out that the pill Plaintiff found was used to treat diabetes.
Plaintiff's co-worker Karen is in fact a diabetic.

36.   On or around September 29, 2016, Plaintiff was written up for using the microwave to
heat up her lunch, which she was never instructed not to use.  The write-up also
included an insubordination write-up because Plaintiff had told Defendant LISA that

she would make lunch when LISA completed the breakfast dishes.  LISA asked

Plaintiff if she wanted to do the dishes, which Plaintiff responded, no, she would begin

lunch when LISA was finished.

37. LISA at no time instructed Plaintiff to do the dishes, but rather, asked Plaintiff if she

would prefer to do them.

38. On or around October 3, 2016, Defendant RECCA wrote Plaintiff up for returning

from lunch at 2:00 P.M.  Plaintiff returned back from lunch late, because she had a

doctor appointment and had to get blood work.  Two hours prior, Plaintiff called and

informed RECCA that the doctor required her to get blood work, but offered to do it

another time if that was a problem.

39. Defendant RECCA told Plaintiff that it was fine to "do what you need to do."

40. Then, Defendant RECCA wrote Plaintiff up in retaliation for her request to get blood

work.

41. When Plaintiff asked why she was being written up because she always provides

advanced notice of her doctor appointments related to her pregnancy, Defendant

RECCA blamed Plaintiff for not writing them on the appropriate piece of paper.

42. Defendants then made Plaintiff get a note from her doctor for the appointment, stating

that Plaintiff had left without permission.

43. Plaintiff was permitted to attend the doctor appointment, and no other employee was

required to provide a doctor note when they took their children to the doctor.

44. On or around the end of September Plaintiff notified Defendants that she may need to

use the restroom more frequently due to the complications with her pregnancy.

45.   On or around October 13, 2016, Plaintiff had to use the restroom, as a result of the
complications related to her pregnancy.  At approximately 7:30 A.M. Plaintiff buzzed
for assistance in the classroom multiple times, to have someone relieve her.

46.   Defendant LISA told Plaintiff that she was conducting a tour and would arrive to
relieve Plaintiff in twenty (20) minutes.

47.   At approximately 8:10 A.M. Defendant LISA had still not arrived to relieve Plaintiff.

48.   Plaintiff again called LISA for assistance, to which LISA responded that she was now
in an interview and could not relieve Plaintiff to use the restroom.

49.   At the time Plaintiff had six (6) children in her care, and the ratio for a classroom was
four (4) children per one teacher.

50.   Plaintiff asked LISA if Defendants RUCHI, or RECCA could assist her.

51.   LISA responded, "No, they are both busy."

52.   Plaintiff's co-worker Meredith arrived and joined Plaintiff in the classroom.  During
that time, four of the children in the classroom were napping, and four were playing.

53.   Plaintiff's co-worker Meredith only had to supervise the four children who were
playing, and as a result was within the required ratio of four children per instructor.

54.   After waiting over an hour, at approximately 8:40 A.M., Plaintiff fled the room to find
a restroom before she urinated in her pants.

55.   Plaintiff went to two different bathrooms, both were locked.

56.   The restrooms had not both been locked at any time prior during Plaintiff's
employment with Defendants.

57.   Plaintiff had alerted her co-worker Meredith that she had to find a restroom to use.

58.   Plaintiff ultimately had to use the restroom in the three-year-old classroom.

59. Once Plaintiff was finished, she was returning to the infant classroom, and witnessed Defendants LISA and RECCA in the hallway talking and laughing.

60. When Plaintiff went to clock out for lunch that same afternoon, she was again called into the office by Defendants RUCHI, RECCA, and LISA.

61. Defendants presented Plaintiff a termination letter for using the restroom and leaving Plaintiff's classroom out of ratio.

62. Again, Plaintiff's classroom had been out ratio prior to using the restroom, because Plaintiff was alone in the infant classroom with six (6) children, when the ratio is four (4) children per instructor.

63. Plaintiff explained that she held it as long as she could, but that she was afraid she would have relieved herself in her pants and on the floor of the classroom had she not rushed to the restroom.

64. Plaintiff also stated that earlier that day, she was in a classroom that was deficient in ratio of instructors to children and instructors because the Defendants RECCA, RUCHI and LISA left Plaintiff in the classroom alone with too many children the entire hour prior to using the restroom.

65. Because of Plaintiff's pregnancy, in response to her request for a reasonable accommodation to use the restroom, and in retaliation for Plaintiff's protests against the discrimination, Defendants' wrongfully and illegally terminated Plaintiff.

66. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

68.   Upon information and belief, the discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

69.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

70.   The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

71.   Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

72.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

73.   Title VII states in relevant parts as follows:

§ 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer − (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

74.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §

2000e *et seq.*, by discriminating against Plaintiff because of her pregnancy and sex.

75.     Furthermore, section 701 of the Civil Rights Act of 1964 as amended states that

"'because of sex' or 'on the basis of sex' include, but are not limited to, because of or

on the basis of pregnancy, childbirth, or related medical conditions; and women

affected by pregnancy, childbirth, or related medical conditions shall be treated the

same for all employment-related purposes, including receipt of benefits under fringe

benefit programs, as other persons not so affected but similar in their ability or

inability to work."

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

76.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

77.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides

that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has
opposed any practice made an unlawful employment practice by this
subchapter, or because [s]he has made a charge, testified, assisted or
participated in any manner in an investigation, proceeding, or hearing under
this subchapter."

78.     Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e

*et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges

of employment because of her opposition to the unlawful employment practices of

Defendant.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

79.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

80.   Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub.

L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United

States Code, beginning at section 12101.

81.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I,

Section 12112, Discrimination [Section 102] states:

"(a) General rule. - No covered entity shall discriminate against a qualified
individual on the basis of disability in regard to job application procedures,
the hiring, advancement, or discharge of employees, employee compensation,
job training, and other terms, conditions, and privileges of employment."

82.   Defendants engaged in an unlawful discriminatory practice by discriminating against

Plaintiff because of her disability (pregnancy).

83.   As such, Plaintiff has been damaged as set forth herein.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

84.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

85.   The PHRA § 955 provides that it shall be an unlawful discriminatory practice:  "(a)

For any employer because of the race, color, religious creed, ancestry, age, sex,

national origin or non-job related handicap or disability or the use of a guide or

support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

86. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race.

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

90. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

91.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

92.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For

any person, employer, employment agency, labor organization or employee, to aid,

abet, incite, compel or coerce the doing of any act declared by this section to be an

unlawful discriminatory practice, or to obstruct or prevent any person from complying

with the provisions of this act or any order issued thereunder, or to attempt, directly or

indirectly, to commit any act declared by this section to be an unlawful discriminatory

practice."

93.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §

955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory

conduct


### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  Philadelphia, Pennsylvania
        December 21, 2017

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By: _____
        Samuel C. Wilson, Esq.
        1845 Walnut Street, Suite 1601
        Philadelphia, Pennsylvania 19103
        (215) 391-4790

# Exhibit "B"

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| ⌐ ⌐<br><br>Human Resources Manager<br>**KIDDIE ACADEMY INTERNATIONAL INC**<br>**3415 Box Hill Corporate Center Dr**<br>Abingdon, MD 21009<br><br>∟ ∟ | **Janasia Wadley** |
| | THIS PERSON (check one or both) |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO. |
| | **530-2017-01417** |

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by

   to
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| | |
|---|---|
| **Damon A. Johnson,**<br>**Supervisory Investigator**<br>_____<br>*EEOC Representative*<br><br>*Telephone*   **(215) 440-2664**<br>_____ | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107**<br>**Fax: (215) 440-2604** |

Enclosure(s): [ ] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race  [ ] Color  [X] Sex  [ ] Religion  [ ] National Origin  [ ] Age  [ ] Disability  [ ] Retaliation  [ ] Genetic Information  [ ] Other

ISSUES: Discharge, Discipline, Harassment, Accommodation

**DATE(S) (on or about): EARLIEST: 10-13-2016   LATEST: 10-13-2016 A perfected charge will be provided to you once it has been received. Please send an email to PDOContact@eeoc.gov with the name, title, and email address of your organization's designated representative for EEOC matters.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **February 7, 2017** | **Spencer H. Lewis, Jr.,**<br>**District Director** | *[signature]* |