| | |
|---|---|
| JANASIA WADLEY, <br><br> *Plaintiff,* <br><br> v. <br><br> KIDDIE ACADEMY INTERNATIONAL, INC., *et al* <br><br> *Defendants.* | CIVIL ACTION <br> NO. 17-05745 |

**PAPPERT, J.**                                                                                    **June 19, 2018**

## MEMORANDUM

Janasia Wadley sued her former employer Kiddie Academy of Langhorne, Kiddie Academy International, Inc. and Essential Brands, Inc. alleging gender discrimination (Count 1) and retaliation (Count 2) under Title VII and violations of the Americans with Disabilities Act (Count 3). Wadley also brings comparable state law claims under the Pennsylvania Human Relations Act (Counts 4 and 5). Finally, she asserts claims against her former supervisors Christina Recca, Ruchi Srivastava, and "Lisa" for individual liability under the PHRA (Count 6). All Defendants move to dismiss.[1] (Mot., ECF No. 10.) The Court grants the Motion with respect to Counts 1, 2 and 5 and Wadley may amend her Complaint in accordance with this Memorandum. The Court denies the Motion with respect to Counts 3 and 4.

---

[1]      Defendants filed a "Motion to Dismiss, in Part" because they do not for some reason move to dismiss Count 6.

I

Wadley accepted a position as an infant teaching assistant at Kiddie Academy of
Langhorne, a child daycare and learning facility, on July 8, 2016. (Compl. ¶ 20.) When
Wadley went to Kiddie to complete forms prior to her designated July 25 start date, she
told Director Christina Recca that she was pregnant and gave Recca a list of upcoming
pregnancy related doctor appointments that she would need to attend. (*Id.* ¶¶ 21–22.)
In the fall of 2016, Wadley's co-worker "Karen" began to "harass" Wadley about the way
she filled out daily forms. (*Id.* ¶ 24.) One day while Wadley was rocking an infant to
sleep, Karen told her to "get up off [her] butt and start doing something." (*Id.* ¶ 27.)
Wadley told Karen that she was pregnant and doing her job and Wadley later
complained to Srivastava about Karen's "verbal attacks." (*Id.* ¶¶ 29–30.) Kiddie
offered to switch her to a different classroom but Wadley declined the offer because she
had already bonded with the infants and their parents and she did not want her hours
to change. (*Id.* ¶¶ 31–32.)

At some point in late September 2016, Wadley also told Kiddie that she was
prone to chronic urinary tract infections and that she previously suffered a miscarriage
as a result of complications from such an infection. (*Id.* ¶ 48.) She provided a note from
her doctor stating that she may need to use the restroom more frequently, explaining
that doing so was necessary to decrease the chance she would contract a urinary tract
infection, which could lead to a miscarriage. (*Id.* ¶¶ 46–48.)

On October 13, 2016 at 7:30 a.m., Wadley was the only employee in a classroom
with six children, despite Kiddie's policy requiring a 4 to 1 child to instructor ratio. (*Id.*
¶ 53.) Wadley called for assistance so that she could go to the bathroom. (*Id.* ¶ 49.)

Lisa told Wadley that she was giving a tour of the facility but could relieve Wadley in twenty minutes. (*Id.* ¶ 50.) Forty minutes later, Lisa had not arrived so Wadley called her again. Lisa told Wadley that neither she nor Srivastava nor Recca could relieve Wadley. (*Id.* ¶¶ 51–55.) Shortly thereafter, another co-worker joined Wadley in the classroom to supervise the children. (*Id.* ¶¶ 56–58.) After waiting for over an hour for someone to cover for her, Wadley left the classroom to use the bathroom. (*Id.*) Later that day, Wadley met with Srivastava, Recca and Lisa, who then fired Wadley for leaving the classroom "out of ratio" when she used the bathroom. (*Id.* ¶¶ 64–65.) Wadley filed a charge of discrimination and retaliation with the EEOC on January 17, 2017, received a right to sue letter from the EEOC on October 24, 2017, and subsequently filed this lawsuit.

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir.

2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches

only to those allegations for which there is sufficient factual matter to render them

plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir.

2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal

conclusions are not entitled to the same presumption." *Id.*

III

Defendants seek to dismiss all counts against Kiddie Academy International and

Essential Brands, contending that Wadley does not allege facts sufficient to establish

that either of the entities can be liable under a joint employer or single employer

theory.[2]  They assert that Wadley worked only for Kiddie Academy of Langhorne.  (Mot.

at 5–7.)  A joint employer relationship exists "when the two entities exercise significant

control over the same employees." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d

417, 421 (E.D. Pa. 2016) (citing *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)).  To

determine whether the companies can both be held liable under the joint employer

theory, courts consider: "1) [the] authority to hire and fire employees, promulgate work

rules and assignments, and set conditions of employment including compensation,

benefits, and hours; 2) day-to-day supervision of employees, including employee

discipline; and 3) control of employee records, including payroll, insurance, taxes, and

the like." *Id.*

---

[2]     Wadley claims that Kiddie Academy International, Inc. changed its name to Essential
Brands, Inc. (Compl. ¶ 4) yet she still includes Kiddie Academy International, Inc. as a defendant.  It
is unclear whether Wadley claims that Kiddie Academy International, Essential Brands, or both, are
single or joint employers of Kiddie Academy of Langhorne.  To make this Memorandum more
coherent than the Complaint, the Court refers where necessary to the defendants collectively as
Kiddie.

Under the single employer theory, two nominally distinct companies can be treated as a single entity for purposes of the antidiscrimination laws if the two companies' affairs "are so interconnected that they collectively cause[ ] the alleged discriminatory employment practice." *Id.* (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 86 (3d Cir. 2003)). The court considers factors such as "(1) the degree of unity between the entities with respect to ownership, management (both directors and offers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other." *Id.* at 422 (citing *Nesbit*, 347 F.3d at 87).

Wadley conclusorily alleges that "Kiddie Academy of Langhorne Essential Brands, Inc. are single and joint employers of plaintiff." (Compl. ¶ 9.) She further contends that Kiddie Academy of Langhorne "is a franchise" of Essential Brands. (Compl. ¶ 8.) Although courts within the Third Circuit have held that the contours of the "employment relationship can only be established by a careful factual inquiry" and have allowed pleadings with a "thin" factual record to survive a motion to dismiss, Wadley does not allege a single fact from which the Court can infer that any of the joint or single employer theory factors are present. *See Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468 (E.D. Pa. 2010) (allegations that employees worked on the premises owned by the alleged joint employer and that the employer controlled decisions relating to compensation were sufficient to survive the motion to dismiss stage); *Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F. Supp. 2d 598 (E.D. Pa. 2010) (allegations

5

that the employee was covered by sexual harassment policies promulgated by the joint

employer and that the employer required termination of employees under certain

circumstances and participated in daily supervision were sufficient to survive the

motion to dismiss stage); *Harris v. Midas*, No. 17-95, 2017 WL 5177668, at *2 (W.D. Pa.

Nov. 8, 2017) (allegations that the employee was subject to the joint employer's

workplace policies, and that the employer provided training and guidance to its

franchisees and conducted site inspections were sufficient to survive motion to dismiss).

All claims against Kiddie Academy International and Essential Brands are dismissed

without prejudice; Wadley may amend her Complaint to the extent she can to allege

facts to show a joint or single employer theory of liability.[3]

## IV

## A

In Counts 1 and 4 respectively, Wadley alleges that Kiddie violated Title VII and

the PHRA by discriminating against her because she was pregnant.[4]  Specifically, she

appears to contend that she was fired because she requested an accommodation related

to her pregnancy, presumably frequent use of the bathroom.[5]

---

[3]     In response to Defendants' Motion, Wadley cites to Kiddie Academy International's website
(Pl's Resp. in Opp. at 25 n.1) which states that Kiddie Academy International will help franchisees
select the location for the daycare, assist with concept and business plans, provide training, and
conduct site visits.  None of this information, however, is alleged in Wadley's Complaint and the
Court cannot consider it when deciding the Motion.

[4]     Violations of the PHRA are analyzed in the same manner as Title VII violations.  *Weston v.
Commonwealth of Pennsylvania,* 251 F.3d 420, 425 n.3 (3d Cir. 2001).

[5]     Wadley's theory is unclear, to say the least.  In her Response to Defendants' Motion to
Dismiss the Title VII claims, Wadley argues only that discrimination based on pregnancy is a form of
gender discrimination and that she was fired for requesting a pregnancy related accommodation.

i

To establish a *prima facie* case of gender discrimination Wadley must show that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. *McCormick v. Allegheny Valley Sch.*, No. 06-3332, 2008 WL 355617, at *8 (E.D. Pa. Feb. 6, 2008). As a pregnant female, Wadley was a member of a protected class. *See Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 754 (E.D. Pa. 2002); 42 U.S.C. § 2000e(k). The Defendants do not contest Wadley's qualifications for the position. Wadley fails, however, to allege any facts showing that she was fired under circumstances that give rise to an inference of discrimination. "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside the relevant class." *Wooler v. Citizens Bank,* No. 06-1439, 2006 Dist. LEXIS 86606, at *16 (E.D. Pa. 2006). Wadley alleges that other employees left her alone in the classroom; she does not contend that anyone of them were in any way "similarly situated" to her or that they were treated more favorably.[6]

ii

To show that she was denied an accommodation and thus discriminated against under Title VII and the Pregnancy Discrimination Act, Wadley must show that: (1) she belongs to a protected class, (2) she sought an accommodation, (3) the employer did not accommodate her, and (4) the employer accommodated others similar in their ability or

---

[6] Again, while Wadley claims in her Response that Kiddie did not strictly follow the child to instructor ratio at any other time, implying that other non-pregnant women were not terminated for similar behavior, she didn't allege any of this in her Complaint.

inability to work. *Young v. United Parcel Serv., Inc.,* 135 S. Ct. 1338, 1354 (2015).

Wadley belongs to a protected class and she alleges that she sought, and was denied (at

least for more than an hour) the frequent use of the bathroom. Wadley does not allege

however, any facts that allow the Court to infer that Kiddie accommodated others

"similar in their ability or inability to work."

B

In Counts 2 and 5 respectively, Wadley alleges that Kiddie violated Title VII and

the PHRA by retaliating against her. To state a claim for retaliation under Title VII,

Wadley must show that: (1) she engaged in a protected activity, (2) the employer took

an adverse action against her, and (3) there was a causal connection between her

participation in the protected activity and the adverse employment action. *Moore v.

City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

Kiddie contends that Wadley does not allege facts showing that she engaged, at

any point, in a protected activity. Although her theory is (again) opaque, it seems as

though Wadley claims that she was fired because she complained about Karen's verbal

attacks. She claims that Karen told her to "get up off [her] butt and start doing

something." (Compl. ¶ 27.) Wadley thereafter "reported Karen's verbal attacks and

harassing behavior" to her supervisor. (*Id*. ¶ 30.) "A general complaint of unfair

treatment does not translate into a charge of illegal sex discrimination for purposes of

determining whether a plaintiff has engaged in protected [ ] conduct." *Hallman v. PPL

Corp.*, No. 11-02834, 2013 WL 1285470, *10 (E.D. Pa. Mar. 28, 2013) (citing, *Barber v.

CSX Distribution Services,* 68 F.3d 694, 702 (3d Cir. 1995)). The complaint must

"explicitly or implicitly" allege that gender was the reason for the actions that the

employee is complaining about.  *Id.*  Wadley's complaint to her supervisor does not

explicitly or implicitly allege that her gender motivated Karen's comments.

C

In Counts 3 and 4 respectively, Wadley alleges that Kiddie violated the ADA and

PHRA, claiming that she was discriminated and retaliated against because of her

purported pregnancy related complications.  Kiddie argues that Wadley fails to allege

that she has a disability protected by the ADA.[7]  (Mot. at 8–9.)

The ADA makes it unlawful for an employer "to discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A

"disability" is defined by the ADA as: "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of [an] individual; (B) a

record of such an impairment; or (C) being regarded as having such an impairment."

*Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 762 (3d Cir.

2004) (citing 42 U.S.C. § 12102(2)).  EEOC regulations provide that an individual is

"substantially limited" in a major life activity if they are "(i) Unable to perform a major

life activity that the average person in the general population can perform; or (ii)

Significantly restricted as to the condition, manner or duration under which [they] can

---

[7]      Kiddie also contends that Wadley failed to exhaust her administrative remedies because she
did not allege a violation of the ADA in her EEOC charge.  (Mot. at 8–9.)  In response, Wadley
attaches what appears to be a cover page to her EEOC complaint from January 30, 2017 where she
checked a box indicating that her cause of discrimination was based on her disability.  (Pl's Resp. in
Opp., Ex. A.)  In reply, Kiddie claims that it never received the January cover page and instead
attach a cover page to Wadley's EEOC complaint from February 7, 2017 showing that Wadley did
not check off the ADA box which would have given them notice that she was asserting a claim under
that statute.  (Reply, Ex. A.)  The parties may take this disputed issue up at the summary judgment
stage.

9

perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).

Pregnancy alone is not a disability under the ADA, though complications arising from pregnancy may constitute disabilities.  *See Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668–69 (E.D. Pa. 2016); *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 344 (M.D. Pa. 2015) (holding that round-ligament syndrome and postpartum depression constitute disabilities under the ADA), *aff'd*, 660 F. App'x 149 (3d Cir. 2016); *Smith v. Ctr. For Organ Recovery & Educ.*, No. 13-428, 2013 WL 4049550, at *1 (W.D. Pa. Aug. 9, 2013) (noting that disabling physiological disorders related to an abnormal pregnancy might be protected under the ADA).  Further, a high-risk pregnancy may, in some instances, constitute a disability if it substantially limits a woman's reproductive functions or other major life activity.

Wadley alleges that she had a prior miscarriage, specifically as a result of complications from a urinary tract infection.  (Compl. ¶ 48.)  She asserts that she told Kiddie that her pregnancy was "high risk" because of her proclivity to these infections and that "urinary tract infections can cause kidney infections, which can cause early labor and low birth weights," and because of her medical history, that "frequent use of the bathroom [is] required."  (*Id.* ¶¶ 46, 48.)  She also alleges that her doctor provided a note which stated that Wadley may need to use the bathroom frequently.  (*Id.* ¶ 45.)  Wadley has alleged enough facts at this stage to state a disability under the ADA.  Defendants may renew their argument at summary judgment when there is a more developed record with respect to Wadley's history, susceptibility to chronic infections,

and the limitations these issues may have on her major life activities, presumably her ability to carry her pregnancy to term and procreate.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.