IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANASIA WADLEY,<br><br>        *Plaintiff,*<br><br>   v.<br><br>KIDDIE ACADEMY INTERNATIONAL, INC., *et al.*,<br>        *Defendants*. | CIVIL ACTION<br>NO. 17-05745 |

**PAPPERT, J.**                                                                                                     October 1, 2018

## **MEMORANDUM**

Janasia Wadley sued her former employer Kiddie Academy of Langhorne, Kiddie Academy International, Inc., Essential Brands, Inc. and three of her former supervisors. She alleges gender discrimination under Title VII (Count 1), retaliation under Title VII (Count 2) and violations of the Americans with Disabilities Act (Count 3). Wadley also brings comparable state law claims under the Pennsylvania Human Relations Act (Counts 4 and 5). Finally, she asserts claims under state law for aiding, abetting and coercing the discriminatory conduct (Count 6). Defendants move to dismiss all claims against Kiddie Academy International, Inc., Essential Brands, Inc. and the individual defendants, as well as Counts 1, 2, 4, 5, and 6 of the Third Amended Complaint. (Mot. Dismiss, ECF No. 25.) The Court grants the Motion with respect to Counts 1, 2, 5 and 6 and as to all claims against Kiddie Academy Intentional, Inc. and the individual defendants. The Court denies the Motion with respect to Count 4 and all claims against Essential Brands, Inc.

1

I

Wadley accepted a position as an infant teaching assistant at Kiddie Academy of Langhorne, a child daycare and learning facility, on July 8, 2016. (Third Am. Compl. ¶ 23.) When Wadley went to Kiddie to complete forms prior to her designated July 25 start date, she told Director Christina Recca that she was pregnant and gave Recca a list of upcoming pregnancy related doctor appointments that she would need to attend. (*Id.* ¶¶ 24–25.) In the fall of 2016, Wadley's co-worker Karen[1] began to "harass" Wadley about the way she filled out daily forms. (*Id.* ¶ 28.) One day while Wadley was rocking an infant to sleep, Karen told her to "get up off [her] butt and start doing something." (*Id.* ¶ 30.) Wadley told Karen that she was pregnant and doing her job and Wadley later complained to Ruchi Srivastava about Karen's "verbal attacks." (*Id.* ¶¶ 32–33.) Kiddie offered to switch her to a different classroom but Wadley declined the offer because she had already bonded with the infants and their parents and she did not want her hours to change. (*Id.* ¶¶ 34–35.)

At some point in late September 2016, Wadley also told Kiddie that she was prone to kidney infections, which can inhibit a woman's ability to carry a baby to term. (*Id.* ¶¶ 48–49.) Wadley had previously suffered a miscarriage as a result of complications from such an infection. (*Id.* ¶ 50.) She provided a note from her doctor stating that she may need to use the restroom more frequently, explaining that doing so was necessary to decrease the chance she would contract a kidney infection, which could lead to a miscarriage. (*Id.* ¶¶ 48–49, 51.) The note also stated that Wadley had a

---

[1] Wadley's Third Amended Complaint identifies some individuals only by their first name. The Court accordingly refers to those individuals by their first name.

lifting restriction and was not able to lift infants over twenty-five pounds because of the high risk nature of her pregnancy. (*Id.* ¶ 51.)

At some point thereafter, Wadley was working in the same room as Karen. (*Id.* ¶ 53.) Karen refused to lift the heavier infants, and Wadley was called into the office and reprimanded as a result of Karen's refusal to do so. (*Id.*) Wadley told Rucchi that she felt she was being singled out because of her pregnancy and that she, rather than Karen, was being forced to lift the heavier children. (*Id.* ¶ 54.)

On October 13, 2016 at 7:30 a.m., Wadley was the only employee in a classroom with six children, despite Kiddie's policy requiring a 4 to 1 child to instructor ratio. (*Id.* ¶¶ 55, 59.) Wadley called for assistance so that she could go to the bathroom. (*Id.* ¶ 55.) Lisa told Wadley that she was giving a tour of the facility but could relieve Wadley in twenty minutes. (*Id.* ¶ 56.) Forty minutes later, Lisa had not arrived so Wadley called her again. Lisa told Wadley that neither she nor Srivastava nor Recca could relieve Wadley. (*Id.* ¶¶ 58–61.) Another co-worker subsequently joined Wadley in the classroom to supervise the children. (*Id.* ¶ 62.) After waiting for over an hour for someone to cover for her, Wadley left the classroom to use the bathroom. (*Id.* at 64.) Later that day, Wadley met with Srivastava, Recca and Lisa, who then fired Wadley for leaving the classroom "out of ratio" when she used the bathroom. (*Id.* ¶¶ 70–72.) Wadley filed a charge of discrimination and retaliation with the EEOC on January 17, 2017, received a right to sue letter from the EEOC on October 24, 2017. (*Id.* ¶¶ 4–5.)

Wadley filed this lawsuit on December 21, 2017 and amended her Complaint on February 5, 2018. (Am. Compl., ECF No. 8.) Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Mot.

3

Dismiss, ECF No. 10), which the Court granted in part, while allowing Wadley to amend her Complaint again. (Mot. Dismiss Op., ECF No 14.) On July 3, Wadley filed a Second Amended Complaint, which was identical to the first Amended Complaint. (Second Am. Compl., ECF No. 16.) After receiving leave of the Court to again amend her complaint, Wadley submitted her Third Amended Complaint. (Third Am. Compl., ECF No. 24.) Before the Court is Defendants' Motion to Dismiss the latest iteration of her pleading.

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir.

4

2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

Defendants seek to dismiss all counts against Kiddie Academy International and Essential Brands, contending that Wadley does not allege facts sufficient to establish that either of the entities can be liable under either a joint employer or single employer theory.

First, Wadley claims that Kiddie Academy Intentional, Inc. has not existed since 1999, seventeen years before she was hired. (Third Am. Compl. ¶ 4.) She contends that Kiddie Academy International changed its name to Essential Brands, Inc., yet she lists Kiddie Academy International as a defendant. (*Id.*) Wadley herself claims the entity no longer exists; all claims against Kiddie Academy International are dismissed with prejudice.

With respect to Essential Brands, Inc., Wadley alleges that Essential Brands is liable under both the joint employer and single employer theories. A joint employer relationship exists "when the two entities exercise significant control over the same employees." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 421 (E.D. Pa. 2016) (citing *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)). To determine whether a company can be held liable under the joint employer theory, courts consider: "1) [the] authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment including compensation, benefits, and hours; 2) day-to-day

5

supervision of employees, including employee discipline; and 3) control of employee records, including payroll, insurance, taxes, and the like." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d at 421 (citing *Myers v. Garfield & Johnson Enters., Inc.*, 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010)). "No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." *Myers*, 679 F. Supp. at 608 (citing *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 494 (W.D. Pa. 2007)).

Under the single employer theory, two nominally distinct companies can be treated as a single entity for purposes of the antidiscrimination laws if the two companies' affairs "are so interconnected that they collectively cause[ ] the alleged discriminatory employment practice." *Anderson*, 218 F. Supp. 3d at 421. (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 86 (3d Cir. 2003)).[2] A determination as to whether two entities are interconnected requires an "intentionally open-ended, equitable inquiry," which focuses "on the degree of operational entanglement—whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." *Nesbit*, 347 F.3d at 87. Courts consider factors such as "(1) the degree of unity between the entities with respect to ownership, management (both directors and offers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business

---

[2] The Third Circuit also "consider[s] a company and its affiliates a single employer . . . when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach." *Nesbit*, 347 F.3d at 85–86. Here, however, there is no allegation that Essential Brands and Kiddie Academy of Langhorne split itself into entities with less than fifteen employees in order to evade the anti-discrimination laws.

6

exclusively with the other." *Anderson*, 218 F. Supp. 3d. at 422 (citing *Nesbit*, 347 F.3d at 87).

"Discovery is often necessary before a plaintiff can reliably define the contours of the employment relationship." *Anderson*, 218 F. Supp. 3d at 423 (citing *Graves*, 117 F.3d at 729). Furthermore, Courts within the Third Circuit have held that the "employment relationship can only be established by a careful factual inquiry," *Graves*, 117 F.3d at 729, and have allowed pleadings with a thin factual record to survive a motion to dismiss. *See Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468 (E.D. Pa. 2010) (allegations that employees worked on the premises owned by the alleged joint employer and that the employer controlled decisions relating to compensation were sufficient to survive the motion to dismiss stage); *Myers*, 679 F. Supp. 2d 598 (allegations that the employee was covered by sexual harassment policies promulgated by the joint employer and that the employer required termination of employees under certain circumstances and participated in daily supervision were sufficient to survive the motion to dismiss stage); *Harris v. Midas*, No. 17-95, 2017 WL 5177668, at *2 (W.D. Pa. Nov. 8, 2017) (allegations that the employee was subject to the joint employer's workplace policies, and that the employer provided training and guidance to its franchisees and conducted site inspections were sufficient to survive motion to dismiss).

At this stage, the factual record is thin. Without a franchise agreement to support her claims, Wadley points to information found on Essential Brands' website, alleging that Essential Brands: "assist[s] franchisees with site selection, construction, financing, initial training, pre-opening, grand opening and onward assistance," has "full-time subject matter experts available to assist franchisees in areas or real estate,

7

training, operations, business analysis, education, marketing, and technology" and "provides curriculum directives, operational directives and training[.]" (Third Am. Compl. ¶¶ 10–12.) With these factual allegations, Wadley has plead enough to "raise a right to relief about the speculative level," *Twombly*, 550 U.S. at 545, and to support the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* 556 U.S. at 678. As in *Harris*, No. 17-95, 2017 WL 5177668, Wadley claims that Essential Brands provides training and guidance to Kiddie Academy of Langhorne's employees. These allegations barely "nudge [her] claims" of a joint employer relationship "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Wadley can proceed to discovery on her claims against Essential Brands and the Court can review the contours of the employment relationship at the summary judgment stage.

IV

Defendants also move to dismiss Count 6 of the Third Amended Complaint, which seeks to hold the individual defendants liable for aiding, abetting, inciting, compelling or coercing a discriminatory practice. (Mot. 9–10.) Wadley fails to address the issue of individual liability under Section 955 of the PHRA in her Response to Defendants' Motion, and this claim is dismissed as unopposed.[3]

"A party may not stand silent in the face of a motion, expecting the Court to generate arguments on the party's behalf by piecing together arguments and materials scattered throughout the record of the case." *Bridges v. Colvin*, 136 F. Supp. 3d 620, 630 (E.D. Pa. 2015), *aff'd sub nom. Bridges v. Comm'r Soc. Sec.,* 672 F. App'x 162 (3d

---

[3] Instead, Wadley spends much of her Response arguing points not at issue. For instance, she argues over six pages why her ADA claim should proceed, a count which Defendants do not move to dismiss, likely because the Court previously ruled it could go forward. *See* (Resp. Opp, ECF No. 14).

Cir. 2016).  Rule 7.1(c) of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania provides that "any party opposing the motion shall serve a brief in opposition . . . In the absence of a timely response, the motion may be granted as uncontested[.]"  U.S. Dist. Ct. Rules E.D. Pa., Civil Rule 7.1.  Moreover, "[f]ailure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed."  *Celestial Cmty. Dev. Corp. v. City of Philadelphia*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012) (citing *Nelson v. DeVry, Inc.*, 2009 WL 1213640, *10 (E.D.Pa. April 23, 2009)).  "To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."  *Celestial*, 901 F. Supp. 2d 578.  Here, Wadley fails to contest, or even mention, Defendant's motion regarding the individual plaintiffs.

IV

A

In Counts 1 and 4 respectively,[4] Wadley alleges that Kiddie violated Title VII and the PHRA by discriminating against her because she was pregnant.[5]  While

---

[4] In Count 4, Wadley alleges that "Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race." (Third Am. Compl. ¶ 97.)  This allegation and references to Wadley's race appear nowhere else in the Third Amended Complaint, and the Court assumes that she meant to argue "on the basis of her sex."  The Court previously denied Defendants' Motion to Dismiss with respect to Counts 3 and 4 and will allow Count 4 to proceed for the reasons in the Court's previous decision. (Mot. Dismiss Op. 9–11.)  As an aside, the allegation that Wadley is male would likely not help the claim that she was discriminated against on account of her pregnancy.

[5] The analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.  *See Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001) (citing *Smith v. Pathmark Stores, Inc.*, No. 97–1561, 1998 WL 309916, at *3 (E.D. Pa. 1998)).

9

unclear, she appears to contend that she was fired because she requested an accommodation related to her pregnancy.

i

To establish a *prima facie* case of gender discrimination Wadley must show that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. *McCormick v. Allegheny Valley Sch.*, No. 06-3332, 2008 WL 355617, at *8 (E.D. Pa. Feb. 6, 2008). The Third Circuit has further held that in a case alleging pregnancy discrimination, to raise an inference of unlawful discharge a plaintiff must adduce evidence that she was pregnant and the employer knew it. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

Wadley was pregnant and thus a member of a protected class. *See Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 754 (E.D. Pa. 2002). Defendants do not contest that they were aware that she was pregnant, as they knew she was pregnant when she was hired. (Resp. Opp. 11) Moreover, Defendants do not argue that Wadley was not qualified for the position, or that she was subjected to an adverse employment action, her firing.[6] (*Id.* at 12.)

Defendants do contest that her firing occurred under circumstances that give rise to an inference of discrimination. "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected

---

[6] Wadley appears to argue that her claim should proceed because other employees were not reprimanded. Specifically, she alleges that she was written up for failing to have a doctor's note. *See* (Third Am. Compl. ¶ 46). However, the Third Circuit has held that oral and written reprimands that do not materially change the terms of conditions of employment are not sufficiently adverse to qualify under the statute. *Weston*, 251 F.3d at 431.

class as a replacement or the more favorable treatment of similarly situated colleagues outside the relevant class." *Wooler v. Citizens Bank,* No. 06-1439, 2006 Dist. LEXIS 86606, at *16 (E.D. Pa. 2006).

The Court previously ruled that Wadley's pleadings were insufficient to show that her firing occurred under circumstances that give rise to an inference of discrimination. *See* (Mot. Dismiss Op. 7). Even after four attempts, Wadley fails to contend that she was replaced by someone not in her protected class or to allege any facts showing that similarly situated colleagues outside the relevant class were treated more favorable for similar behavior.[7] She simply added the conclusory statement that "similarly situated coworkers were permitted to leave work to take their children to the doctor without having to provide a doctor's note." (Third Am. Compl. ¶¶ 44–46.) That obviously isn't good enough.

ii

Wadley also attempts to show that she was denied an accommodation and thus discriminated against under Title VII and the Pregnancy Discrimination Act. To state a claim, Wadley must show that: (1) she belongs to a protected class; (2) she sought an accommodation; (3) the employer did not accommodate her and (4) the employer accommodated others similar in their ability or inability to work. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015). Wadley belongs to a protected class and she alleges that she sought and was denied two forms of accommodations: restrictions in the weight of the children she was expected to lift and frequent use of the bathroom.

---

[7] While Wadley implies in her Response that other non-pregnant women were not terminated for similar behavior, (Resp. Opp. 23), she did not allege any of this in her Third Amended Complaint. The Court's previous decision pointed out that the Court will not consider facts raised in the Response Brief. *See* (Mot. Dismiss Op. n.6).

11

Wadley again fails, however, to allege any facts that allow the Court to infer that Kiddie accommodated others "similar in their ability or inability to work."

B

In Counts 2 and 5 respectively, Wadley alleges that Kiddie violated Title VII and the PHRA by retaliating against her. The Court previously held that Wadley's allegations fell short of stating a retaliation claim, and her latest pleading fares no better.

Title VII makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory conduct or for bringing or supporting an action arising from the employer's discriminatory conduct. 42 U.S.C. § 2000e–3 (a). To state a claim for retaliation under Title VII, Wadley must show that: (1) she engaged in a protected activity, (2) the employer took an adverse action against her and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006).

With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII. *See Slagle v. Cty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006). The Third Circuit has stated that "[a] general complaint of unfair treatment does not translate into a charge of illegal [sex] discrimination" for purposes of determining whether a plaintiff has engaged in protected opposing conduct. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Instead, the message conveyed by an employee in his or her purportedly-protected activity must "explicitly or implicitly allege that [gender] was the reason for" the actions complained of by the employee. *Id.*

Wadley's purported protected activity is difficult to discern, but it seems to concern Karen's alleged verbal attacks. *See* (Resp. Opp. 18–21.) She claims that Karen told her to "get up off [her] butt and start doing something." (Third Am. Compl. ¶ 30.) Wadley thereafter "reported Karen's verbal attacks and harassing behavior" to her supervisor. (*Id.* ¶ 33.) Wadley's complaint to her supervisor does not explicitly or implicitly allege that her gender motivated Karen's comments, and such a general complaint of unfair treatment does not translate into a charge of alleged discrimination protected under Title VII.

V

Wadley does not request leave to amend her Third Amended Complaint a fourth time. Even if she had, she has had four chances to get it right, and further amendment would be futile.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.